Good morning, honors. It pleases the court, Greg Bach, on behalf of the appellant. I would like to ask for the appellant's permission. I'd like to reserve three minutes for a moment. I would like to address three arguments that I'm permitting. The first is our argument that nothing in the PLRA requires a former prisoner to refile their action rather than using the normal procedural rules, Rule 15d, that allows the supplemental to complain when they're no longer subject to the affirmative defenses that are expected. So that's correct, that nothing prevents them from doing that as long as they've exhausted their remedies. That's correct, right? Well, that certainly is the case, that if they have exhausted their remedies, they could supplement. But we also think that in this case it includes, or included, the plaintiff in doing it. That's true, but we think that if the plaintiff chooses to take steps, he may not have exhausted them, but he chose to take those steps. That is correct. We haven't argued in our briefs that he properly exhausted his remedies. Our position is that once he was no longer a prisoner, he was not bound by the PLRA. What would be the incentive for prisoners to exhaust their remedies if they could just pay it to you? And Mr. Fong, what do you reckon? Well, the same incentives would exist for them to leave, regardless of whether they are required to refile their actions. And I want to be clear on what the narrow issue is here. I don't understand Delia's argument that he couldn't have simply refiled his action and been free of the requirements of the PLRA. You think that there's an agreement that he could have filed their remedies unexhausted because he would have been a post-police person? I think that's correct. That's right. I think that's right. I mean, I think the cases they cite, Cox v. Meyer and the other one is Harris v. Garner, both assumed, at least for the sake of argument, that was the case, right, that they could have refiled their action without exhausting remedies because they were no longer prisoners. Notwithstanding the fact that they had filed while incarcerated, their release made them no longer bound and no longer subject to permanent defendants. So there's a narrow issue. So if D. Jackson had not committed his complaint after his release, would he still be subject to an exhaustion defense? I think that's the first part of your question. If he had not committed his complaint after his release, would he still be subject to an exhaustion defense? I think he would. Right, because ordinarily the way this works in any other statutory context is that you have to agree to the court's intention for supplementing or else the deed that matters to the deed of the original complaint, right, because you haven't done anything to allege that new events have happened after the filing of the original complaint. So you're arguing that the exhaustion defense fails here because of a change in the facts when it was filed, or because of a change in Mr. Jackson's status regarding the content of his complaint? I think it's both. I think as a matter of the facts as they existed, he was no longer subject to the exhaustion requirement, but it was still incumbent on him to supplement his complaint and bring that to the court's attention. Just like in, for instance, this court's decision in North Star Financial, right, if there was an article of freestanding in that case when the initial complaint was filed, the facts of it would be changed. If they secured an assignment from someone who had freestanding to bring that case, they secured an article of freestanding, but they had to supplement their complaint to allege that the events had changed, right? But as facts of the matter, they had an article of freestanding to bring their action. I gather if you have to refile now, it would be time-worn. That really is the subtext here. It would be, but what I can say, I actually don't want to take a position that I would be subject to a defense. Certainly, yes. That is in the background. But what I can say is that at all time, for all the time that he wasn't subject to such limitations, if, for instance, when he filed his supplemental third amendment complaint, it was not strategized in here because he was used within his cessionary period. Right. I mean, my only point is I assume that the risk here is that if just refiled, if he refiled now, dismissed or refiled, then arguably he would be subject to a limitation to the defense. Yes, that's the case. And it's interesting, right, because this case has a very narrow issue that is not terribly momentous, right? It really is the difference between refiling an action and generating a new docket number, or simply making docket number five, which is the subliminal complaint. I mean, it's really a very small question. But in some cases, like this case, there's a background issue of statute of limitations that may require them to supplement rather than refile. And he's in new custody again. He is. So if he refiled, if he survived the statute of limitations, he'd be subject to exhaustion. Well, assuming that he is not released before this court decides to appeal, they would have to bring a motion for summary judgment, and presumably they would try to notice the fact that he has been incarcerated. But I think there are likely additional arguments that he could raise that he's now incarcerated in a different facility and that there may not be a case on the point that he's now subject to the same exhaustion requirement that existed when he was incarcerated in a different facility. But, again, I agree that that is an issue. But it's by no means clear that he won't be released. He's been released several times over the last five years from custody. So we would prefer that that get played out in the district court if that is necessary. Certainly the record doesn't say for how long he'll be in custody at this time. The second issue I wanted to address is the Ninth Circuit decisions that the police have cited in the brief. And I take it to be their position that McKinney v. Carey, Alamantis v. Leyva, and Vanden v. Summerhill effectively controlled this case. But I think if you look at the Ninth Circuit's decision in Robins v. Robinson, it's very clear that, at least as to McKinney v. Carey and Vanden v. Summerhill, that those cases really have nothing to say about the narrow procedural issue presented here, which is whether he was able to use Rule 15d to effectively notice the court that he wasn't subject to the affirmative test any longer. Robins v. Robinson said explicitly that McKinney v. Carey and Vanden v. Summerhill had to be read in the broader context of the clinical rules. And I think that the general statements about when the PLRA doesn't apply to prisoners versus former prisoners in the cases that they've cited really have not much to say about this very narrow and, frankly, technical procedural issue. So the last thing I do want to address is that I think this is the most difficult part of this case, is that there is not a circuit precedent that we have to grapple with here. We've got Cox v. Meyer, Ockman v. Rogovich, and Harris v. Harner. We, in our reply brief, I think, talk about some of the distinctions between those cases and the case here. Ockman v. Rogovich doesn't address Rule 15d at all. And Harris v. Harner is about Section 1997E-E, which is a sort of unusual pre-injury suit requirement for specific kinds of claims. By contrast, here we're talking about the garden variety statutory exhaustion requirements of Section 1997E-A. So whatever it implies to 1997E-E, I think this is a different case. We know that as to statutory exhaustion requirements, ordinarily you can just supplement your complaint to a ledge that the affirmative defense law implies. But putting those distinctions aside, I think the real point is that those cases are fundamentally at odds with Rovich v. Rogovich's suit, which, to the extent that they hold that Rule 15d somehow can't abrogate Section 1997E-A, right? That Section 1997E-A discloses any intention to abrogate Rule 15d. Rhoades v. Robinson says very clearly, and that's Biden, President of the United States Circuit, that nothing in the P.O.R.A. discloses an intention to abrogate Rule 15d in criminal litigation. So I think that is the case we really need to look at. And the other thing I'll say about this case is that they're pre-Jones v. Spock. Jones v. Spock, it's a Supreme Court decision, decided after all three of those decisions. And I think the way that Jones v. Spock is very helpful, as indicated in Rovich v. Robinson, because the Court gives up to Jones v. Spock, to inform its analysis, is it gives us a way to grapple with purported conflicts between the P.L.R.A. and the ordinary federal rules of civil procedure that ordinarily apply to any other statute. And what the Court said is that you have to look at the background federal rules when construing the P.L.R.A. and unless Congress expresses a disclosing intention... Well, actually, I think they said that the fact that the P.L.R.A. tells us extensively that the Court was in exhaustion, but is silent on the issue of whether exhaustion must be pled or is a permanent, or whatever, is a permanent offense, is strong evidence that the use of practice should be followed rules. Right. That's right. But they didn't say penalties. They said what you said. They said if it's silent, then you're looking at the rules, right? And if what you just said is not silent, what do you do? Well, I think it is silent here. As to the... It's actually clear it's an exhaustion requirement. That's true. There is an exhaustion requirement. But what they said, what the Court said in Jones v. Bach, is that the language of that exhaustion requirement may be spoiler-free, meaning that it's just a garden-variety exhaustion requirement, right, like any other statutory exhaustion requirement. So the question is really whether you can read that language, no action shall be brought to... It just wasn't intention about Rule 15d, right, about how PLRA would operate with Rule 15d. So it's silent as to the very narrow question that we're talking about here, which is whether the PLRA actually requires refiling an action as opposed to supplementing. Because remember, all of those cases take it for granted that a prisoner who has been released who is no longer subject to PLRA could refile, right? So it's not as if... Well, they might, but I don't think they would do it. It's true. They maybe should refile, but it might be ineffective. That's true. I mean, certainly there are arguments open, but that's a separate issue. I mean, we know that the affirmative defense is one that the other side wants to raise, and I don't know that they've pointed to any case that's saying that that somehow borrows them from what they've raised here. Which they've obviously raised it here. Yes, go ahead. Well, I don't know that they have argued that he was not free to refile his action. Now, what would happen if he did that? Whether his previous failure to exonerate would be a bar, I don't know that that has been squarely addressed here. And the case has certainly suggested it wouldn't be, right, because he's no longer a prisoner. So creating an action no longer subjects him to any statutory caution. If he's no longer a prisoner, which he was at the time of filing, then he could do that. Is that correct? He could do that? Yeah, we would think he can. But I don't think that addresses the problem here. Well, I think the court said, right, that the statutory caution requirement, don't say no action shall be brought, is boilerplate language. So I think in Rhodes v. Providence, the court construed that to mean that there's no intention there to deviate from the normal procedural rules. So you have to ask yourselves, in any other statutory context, how would we construe this guardian variety statutory caution requirement? Would we require a plaintiff to refile? Is this sort of like a technical formality, to refile rather than supplement merely because of this language? And I think the only way you can construe that language to require refiling is if you're somehow reading into it some of the statutes, underlying the traditional purposes of the PSLRA, by the PSLRA. And Jones v. Spahn, very strongly seems to have said that is not an appropriate way to construe the statute. No, but if you re-file, the question just becomes, was this failure to exhaust while there was a charisma of arms here covering? Yeah, I think that is in the background. But I'm not aware of cases that have decided that issue, presumably, right, that this is an action that he's filing, he's no longer subject to it. But the whole theory of the PLRA is that you want prisoners to exhaust their claims while they're in prison, so that the prison has a chance to address them. That underlying philosophy doesn't dismanage the fact that he's been released. That's true, although this rule, right, that he can supplement rather than refile doesn't create any extra incentives to delay filing, right? Because if he is within his statute of limitations when he's released, he has strong incentives to wait until he's released to file his action, rather than filing it while he's incarcerated, right? Because if he files while he's incarcerated, he's going to be subject to the screening requirements, or if he is filing fees, right? So these incentives to delay filing are going to exist in all these cases, regardless of how you resolve this issue. Because as long as you're in the statute of limitations, you can just wait. There's no doubt about that. So it doesn't create any extra incentives to delay, right? And it doesn't really provide any extra teeth to the purposes of the PLRA, right? Because presumably, they can still refile, and you're still creating all that extra network for the district court. So I see that I'm just about out of time. I would like to save what few seconds I have for a bubble. Thank you. Thank you. Good morning, your honors. May it please the court. Alicia Bauer for defendants. This disorder should be affirmed for two reasons. First, because Mr. Jackson was a prisoner when he initially brought his claim, and used the same kind of positions. His failure to exhaust that claim requires dismissal under the Prison Litigation Reform Act. Second, Mr. Jackson's non-prisoner status when he filed a later amended complaint did not change application of the exhaustion requirement in this case, means it did not change the fact that Mr. Jackson was a prisoner when he initially brought his claim. Because I gather that your position would be, let's assume that he refiled now after the dismissal. Your position would be that he's not entitled to release because he didn't exhaust anyway? Pardon me. If you were to file a new claim now, he would be bound by the exhaustion requirements because he's a prisoner right now, your honor. But assuming he wouldn't, I'm pretty sure I think it's correct. Right. Right, understood. Correct, your honor. If you were to file a new claim now. Assuming that he's released. Correct. He would not be barred by the exhaustion requirement. He may have other issues, like sentimentations. Correct. Correct. Correct. Assuming he wouldn't. So you're arguing that it is significant that the prison administrative process did not reach its conclusion before Jackson's release. That he needed to have exhausted before initiating his case while a prisoner, correct, your honor? And how long does it normally take to, I mean, is there a range of time for the exhaustion to take place? Your honor, I have personally seen six months. I've seen a couple years. It just really depends on the particular situation and its impact on our decision making on this. I don't think it does, your honor, because the issue is that providing a prisoner with an opportunity to address that issue first. So Mr. Jackson, of course, has the right to file a case and initiate a lawsuit while he's a prisoner. He can also wait until he's released. And so, in this situation, Mr. Jackson chose to initiate his lawsuit while still a prisoner without having properly exhausted his remedies. And here there is an implication. He doesn't have to make that decision. He can't file, quote, that the administrative process doesn't take a long time. And then see what procedures you can use to answer it. But those actual limitations issue, I'm thinking, are they right? Well, they tell you. So it's not going to know how long the exhaustion requirement is going to take. Right. Typically, prisoners are entitled to an additional two years for tolling for their prisoner status in California. We would provide that. So that's four years. But the issue is about completing the exhaustion requirement before even initiating his claim that the prisoner is not entitled to file now and exhaust later. That's the general premise. But the oddity of this is that probably he would have exhausted it if he were still in prison and retroactively amended something while in prison. Right? He would not, Your Honor, because he executed. Yeah, you do. Let me play with the question. Do you think the prison can, the warden, I should say, the warden can't preempt a filing simply by releasing somebody before the administrative remedies have been pursued within the prison? I'm sorry. Can you answer that? So here's the circumstance. He's trying to exhaust, and then he's released. So the administrative process is not completed. Well, actually, in this case, you're out of the incident that he should have created this summer of 2010. Mr. Jackson did not file his administrative appeal until 18 months later. There was a 30-day deadline. So Mr. Jackson, in a proper way, he violated the ED and exhaust properly. And so the appeal was canceled. What was occurring after that is Mr. Jackson was appealing that cancellation. Right? So are you claiming that he didn't exhaust because he hadn't concluded his appeal of the grievance? Or are you saying that he, or that was not concluded? Are you saying that was concluded earlier? I guess I'm trying to figure out what your exhaustion argument is specifically. Sure. So, Your Honor, the incident occurred in the summer of 2010. Mr. Jackson was required to file his appeal within 30 days. He failed to do so. The appeal was canceled as untimely. Now Mr. Jackson has the option to appeal that cancellation. But until that appeal is reinstated, that appeal that has to be exhausted all the way through the third level, until that initial appeal is reinstated, then Mr. Jackson can pick that appeal back up and exhaust back to the third level. In this situation, that first appeal was never reinstated. I guess would be the way to phrase that. And I don't think there's an issue about whether Mr. Jackson exhausted or not. I think the parties agree that he failed to exhaust his case. It's cool. If someone is released, whether it's Mr. Jackson or not, before the administrative process concludes, should you agree with an indefinite time period or do you think you're barred from bringing in any claim? Your Honor, I would offer that the analysis there would be that the exhaustion requirement applies. And the question would be whether the remedies are still available. So the administrative appeal process is still available to approve these. They can still complete the administrative appeal process. But looking directly to the text of the statute, no action shall be brought by a prisoner. So sometimes it might be helpful to think of this in two conceptual boxes. The first is whether or not the exhaustion requirement applies at all. And the second box would be by when does an inmate have to exhaust those remedies. So it sounds like your question is going to the first box maybe. Since the inmate was a prisoner when they initially brought their case, the exhaustion requirement would apply. And then if they were released during that process, the exhaustion requirement would still apply because the administrative remedies would still be available to them, especially if they're parolee. They can still exhaust those claims. Right. So the exhaustion remedy could still apply. They'd have to pursue their exhaustion or pursue their remedies appealing this process at the third level while they're outside of prison or show that the remedies weren't available to them. So let's assume that he decided not to appeal. And then he just decided to file suit. What would be the stance position on that? That the action was barred under the prison. Properly, procedurally exhaustive. Correct. And so, Jones, where do you make Jones? Right, Your Honor, in Jones, as opposing counsel has pointed out, he uses this term, polite language, which is correct. But in Jones, the issue is on the term action, not on the term fraud. I think that distinction is important here because what the court was addressing in Jones was whether or not, when a case comes forward that makes that of exhausted and unexhausted claims, must the court dismiss the entire case or can the court let those claims that have been exhausted proceed and the unexhausted claims sort of drop off? So in Jones, the issue wasn't about fraud. It was about action. And here we don't have that issue. The issue of Jackson Fraud He was claiming his state witness positions from the very beginning. So let's assume, hypothetically, that he had been timely in his first claim within the prison. And what was that claim after that was simply part of the normal administrative process. And then he gets released. Meantime, he's filed as soon as he did in this case. So what's the city's position on that? If Mr. Jackson has submitted his administrative appeal in 2010, the likelihood that that process would have been completed by when he was released is very high and he could have filed his lawsuit after that administrative process was completed. I'm just trying to figure out exactly how all these exhaustion requirements play out. So if you're in the middle of an administrative appeal and you're released on valid administrative appeal, what effect does that have in terms of the PLRA? I gather your position would be he can't file a suit until that's exhausted. True. Correct. But the fact that it's still pending when he's released would not prohibit him from filing a suit afterwards. A brand-new suit, Your Honor. Correct. Okay. Would he continue the existing suit if the exhaustion was contained in the case? Your Honor, I would argue that he would... That original... He files a case while still incarcerated without completing the exhaustion process. Does he... He starts the process, he's in the third stage, he is released, he continues to pursue the exhaustion sauce, then he can proceed with his case, right, under High 33? Correct, Your Honor. He can recover whatever financial damages he may have established, right? Correct. Maybe I'm not understanding, and I apologize, but if he starts the administrative appeal process while still incarcerated and he has not initiated a lawsuit, the process is still pending. As soon as he's released, he can file his lawsuit the next day. When he's no longer a prisoner, he's not bound by the exhaustion... When he's no longer a prisoner, he's not bound? Correct. But if he issues a suit while he's a prisoner, what's the answer? In that situation, he can finish the appeal process or not as soon as he's no longer a prisoner. If he's initiating his case while no longer a prisoner, he's not bound by the exhaustion requirements under the Prison Litigation Reform Act. And here's why. No action shall be brought by a prisoner. So under Talamante, as soon as that former prisoner is no longer a prisoner, they're not bound by that exhaustion requirement under the Prison Litigation Reform Act. That's page Talamante's. So why do you care in this case? I'm sorry? Why do you care? I mean, basically, he's issued a subpoena to demand a complaint. You know, he can refile tomorrow if he wants to. Is it because you think you have a statute of limitations? Is that an answer? No, Your Honor, it's an issue... You know, looking to the statute of Congress, it's a true line between rules that apply for prisoners and non-prisoners. Right. So he's filing an amended complaint, and what you want him to do is to file a new complaint. We do, Your Honor. Because they say, well, why does it make a difference? Sure. It's an issue of incentive. So it's not just about Mr. Jackson in this particular case. It's about every case, right? So the exhaustion requirement, it's there for a good reason. Usually, it needs to affect one prisoner, perhaps many prisoners. For example, if you were to take Mr. Jackson's allegations, it's true that the mental health care providers were providing, the same way physicians were providing insufficient mental health treatment in the summer of 2010. That's a real issue, not just for Mr. Jackson, but for every other prisoner who's coming in contact with those physicians at the time. When prisoners use the administrative appeal process, they put the prison immediately on notice, not just of their own issue, but of this issue for all the other hundreds of prisoners who may come in contact with that same problem. So again, for Mr. Jackson's own particular case, in this situation, I understand, but it's a much broader issue, and that's what the Prison Litigation Reform Act is meant to address. Well, I understand the underlying concerns of that mechanism, but it is not a situation where you can say that he could, you know, simply be filed tomorrow and spend years in jail. But he can't, in this case, Your Honor, because he's a prisoner. And so that's the problem with his interpretation of this. And that's what's confusing, that now I'm concerning him. Right, and so that's the problem with it. I'm concerning him, because I'm just thinking hypothetically that if he's out, we'll go for him. And I understand his particular circumstance. We're painting a larger canvas here. So... Right, but I think it does highlight the issue here, Your Honor, is that if we're flip-flopping back and forth between when an amended complaint applies and that's when this exhaustion requirement applies, it creates a lot of problems. I mean, now I was able to check the website to see if he was incarcerated still. It shows that he is. But he's not even within the California Department of Corrections anymore. He's in the Nevada Department of Corrections at this point. I certainly can't exhaust his claims against the penal form. He said it may be difficult, but I understand. How would he do that in Nevada as well? How would he have done it? Would he say, yes, he could, or maybe not? He's not exactly sure. He could mail in the 602MA forms and complete the process that way. But if he had argued against anything, it was no problem for him at that point. So you think a Nevada prisoner could exhaust Kennedy's claims against the California prisons in Nevada? In a practical sense, I think it's possible, yes, you're right. In a practical sense, you think it's possible, right? Is there another sense that it wouldn't be? And you can't think of one, right? Okay. And the California prison system, that's a concern, right? I'm sorry? Well, the truth within the existing things, Correct, exactly, Your Honor. Very late, Your Honor. It was over 18 months late, correct? And I think that's the issue, too, with the timing, is that, and I think the courts have explained this really well, is this idea that the timing's important, creating the administrative record, witnesses. I mean, a year and a half later, asking a physician about an interaction with an inmate, you know, a year and a half before where they probably dealt with hundreds of inmates at that point, it creates a problem. True, I understand all that, but on the other hand, you have a civil lawsuit, and our normal rule is that if you can cure a defect, by filing a medical complaint, you're entitled to do that. The argument is, you can't under the circumstances. Correct. Which is sort of contrary to our general conception of OEM civil litigation. But that's the issue, Your Honor. Opposing counsel offers this idea that the supplemental complaint cleared the issue because when Mr. Jackson filed his supplemental complaint, what he was doing was adding a fact of his prisoner status when he filed his medical complaint. It did not change the fact that he was a prisoner when he initially brought his action. And the sentence is, no action shall be brought by a prisoner. So the fact that he was a non-prisoner when he filed his supplemental complaint changed his prisoner status at that point, but it didn't change the fact that he was a prisoner when he initially brought his complaint. Okay, I think we have Your Honor with hands. Thank you. Thank you, Your Honor. I want to start by addressing that last point about the statutory language. The court in Jones v. Spock made it pretty clear that it is boilerplate language, right? That they're not trying to mark a suture between action and claim. Really, what they're trying to do is just make a normal garnet-variety statutory construction requirement, right? So I don't read that language of action to really say much about the circumstances of this case, right? I don't think it means that when you file an action as a prisoner, you're forever barred from using Rule 15d, right, rather than refiling one. And it wouldn't make sense, right, if you can refile your action, but you can't supplement it. And I also want to address the history of incentives, right? So this really narrow issue right here about whether a prisoner has to refile their action or supplement it is not going to alter the incentives for any prisoner who had the option of simply filing after he was incarcerated. Because the only people who can avail themselves of this rule are people who are not going to be concessional petitions. So for that broad group, or very narrow class of prisoners who will be released in time to file, they're always going to have an incentive to file after they're incarcerated so that they're not subject to the PRA, right? The savvy prisoner is always going to file after, if he knows he can, rather than filing while he's incarcerated. The issue here, though, is whether those prisoners, if they leave them at stake of filing while they are exonerated from administrative remedies. And let me add, there are reasons why prisoners would rightly want to file a civil lawsuit for an injunction while their administrative remedies are pending. Because there may be circumstances where they are in actual danger and need a judge to repeat, right? So there are other reasons besides strategy. And so there are really legitimate reasons to allow them to do that. But for any prisoner who's acting strategically, they're always going to have an incentive to wait, right? So it really doesn't cut one way or another in terms of the appeal interface incentives. And I see I'm out of time. Thanks very much for your understanding of our case. Yes, and thank you for your pro bono representation. My pleasure. Thanks. Thank you, Mr. Argyle. We have time for a decision. And we will move to the last case on the morning. We'll argue in calendar cases, United States v. CRO, proceeding in this case.
judges: Thomas, Murguia, McCalla